## FREEMAN v. RAILROAD RETIREMENT BOARD.

### No. 13663.

United States Court of Appeals
Fifth Circuit.

Nov. 2, 1951.

Lewis L. Scott, Savannah, Ga., for petitioner.

Myles F. Gibbons, General Counsel, David B. Schreiber, Assoc. Gen. Counsel, Railroad Retirement Board, Chicago, Ill. (Louis Turner and Ben Diamond, Chicago, Ill., of counsel), for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and STRUM, Circuit Judges.

**52**

STRUM, Circuit Judge.

Claiming to be the widow of Rufus Freeman, deceased, a completely insured railroad employee under the Railroad Retirement Act, 45 U.S.C.A., as amended July 31, 1946, petitioner Penny Freeman here seeks reversal of a decision of the Railroad Retirement Board which denied her widow's benefits under said Act, but awarded a child's annuity to each of four children of a reputed common law marriage between Rufus Freeman and Mary Freeman, the latter also unsuccessfully claiming to be his widow. The claim of a third putative widow, Rosa Bryant Freeman Walker, was also denied. There is some indication that the employee lived with, or married still another woman, Hattie Lawton, after he left Rosa Freeman, and before he commenced living with Mary Freeman, but no claim was filed by Hattie.

Rufus Freeman died in Jacksonville, Florida, July 10, 1948. There is credible and persuasive evidence that Rufus and petitioner Penny Freeman were ceremonially married in Screven County, Georgia, in October 1905, but that he left her about the year 1920, some 28 years before his death, and never thereafter lived with her, nor contributed to her support, and specifically that he was not living with her at the time of his death. During said 28 years after Rufus left her, petitioner lived near Savannah, Georgia, in Screven County, while Rufus for at least 22 years prior to his death lived in Jacksonville, Florida, some 158 miles away, or in other Florida cities still further from Savannah. On August 8, 1938, however, deceased designated petitioner as his beneficiary under the Act.

The evidence further shows that in March, 1943, Rufus commenced cohabiting with Mary Henry as his common law wife, by whom he had four children. She became known as Mary Freeman and was apparently treated as his wife by Rufus, who continued to cohabit with her and contributed to her support until his death.

■ In order to secure widow's benefits under the Act, the claimant must be both lawfully married to the insured employee and "living with" him at the time of his death as that term is defined in section 209

(n) of the Social Security Act, 42 U.S.C.A. § 409(n). See sec. 5 of the Railroad Retirement Act, as amended July 31, 1946, 45 U.S.C.A. § 228e.

■ The Board denied widow's benefits to both Penny and Mary, the former because although she was lawfully married to Rufus she was not "living with" him at the time of his death; the latter because although living with Rufus at the time of his death, the purported common law marriage was invalid since Rufus' marriage with Penny had never been dissolved. Neither of them was both married to and living with the deceased employee at the time of his death as expressly required by sec. 5 of the Act to entitle her to a widow's allowance.

■ The Board nevertheless awarded survivor annuities to the four children of Rufus and Mary by their common law marriage, because, though apparently illegitimate, these children had been acknowledged by Rufus to be his own, which entitled them to inherit through Rufus under the Florida laws of descent and distribution, in which State Rufus was domiciled at the time of his death. Sec. 731.29, Fla.Stat.Ann., as amended by Laws of Florida, 1945, chap. 22783, sec. 1. In re Horne's Estate, 149 Fla. 710, 7 So.2d 13.

■ The evidence amply supports the Board's findings of fact. Petitioner contends, however, that by designating her in 1938 as his beneficiary under the Act, the employee created in her a vested right of which she could not be deprived by the 1946 amendment of the Railroad Retirement Act which established a new plan of survivor annuities and lump sum payments to widows of deceased employees, with added requirements to become eligible therefor. Such a designation, however, does not create in the beneficiary a vested right in a gratuity such as this until payment has become due. Until then, any claim of the beneficiary is a mere expectancy created by the law, subject to revocation by the same authority which granted it. It becomes vested only by the happening of the event which entitles the beneficiary to presently receive payment. Pennie v. Reis, 132 U.S.

464, 10 S.Ct. 149, 33 L.Ed. 426; McLeod v. Fernandez, 1 Cir., 101 F.2d 20.

The Board's findings being well supported by the facts, and the Court finding no error of law therein, the Board's decision as to Penny Freeman is affirmed.